## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CRISTINA RADI,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. RWT-09-2089** |
| | ) | |
| **KATHLEEN SEBELIUS, Secretary, U.S.** | ) | |
| **Department of Health & Human Services**, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

The United States of America, on behalf of the Secretary of the Department of Health and Human Services ("HHS"), respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss and for Summary Judgment.

Plaintiff Radi alleges that HHS discriminated against her on the basis of her race (Asian) and her national origin (Vietnamese), and in retaliation for prior Equal Employment Opportunity ("EEO") activity, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  (Doc. 1 at ¶¶ 1-3).

This Complaint for employment discrimination should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted or under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  If the Court determines that plaintiff Radi has adequately stated any claims over which it has subject-matter

jurisdiction to adjudicate, summary judgment should be entered in favor of the defendant because undisputed facts establish Radi is not entitled to relief.

## BACKGROUND

### A.    Procedural History

Plaintiff Radi made initial contact with an Equal Employment Opportunity Counselor with regards to the allegations in this case on January 22, 2009.  (EEO Counselor's Report at 1, attached as Ex. 1).  Radi subsequently filed a Formal Complaint of Discrimination on February 27, 2009.  (Formal Complaint of Discrimination, attached as Ex. 2).

Based upon both the initial contact interview and the allegations in the Formal Complaint of Discrimination, HHS investigated whether plaintiff Radi was discriminated against when: (1) her request for continued leave was denied on January 12, 2009; (2) she was placed on Absence Without Leave ("AWOL") starting January 2, 2009; (3) her request for a reassignment on December 10, 2008, was denied; (4) her request to attend training for the Oracle/PS computer software program was denied on October 23, 2008; and (5) she was denied access to the computerized "Business Object System" from July 2007 forward.  (Letter of Acceptance at 1, attached as Ex. 3).  Plaintiff Radi was specifically advised to notify HHS if the alleged claims were not correctly identifed as set forth above, and no such notification was made.  (Id. at 2).

Plaintiff Radi brought this action on August 10, 2009.  (Doc. 1).

### B.    Factual Background

Plaintiff Radi was employed with HHS most recently as an Information Technologies ("IT") Specialist in the Enterprise Applications Division ("EAD"), Information Systems

Management Service, Program Support Center ("PSC").  (Notice of Removal at 1, attached

hereto as Ex. 4).

Plaintiff Radi filed a complaint of discrimination with the Equal Employment

Opportunity Commission against HHS in 1999, and the parties resolved the matter through a

negotiated settlement in February of 2001.  (Settlement Agreement, attached as Ex. 5).  The 2001

Settlement Agreement "resolve[d] all claims which are or were alleged, or which might or could

have been alleged by [Radi] against the Agency and/or its employees based on incidents arising

our of [Radi]'s employment with the Human Resources Service (HRS), Program Support Center

(PSC), occurring on or before the effective date of this agreement" and provided that "[Radi] will

not file a complaint, grievance, charge, appeal, action, or suit against the Department of Health

and Human Services, or any officer or employee thereof, with respect to any action which is

related to or arose out of her employment with HRS occurring prior to the effective date of this

agreement."  (Id.).

Plaintiff Radi remained employed with HHS and, in January of 2007, attended (with the

entire staff of her office) a training seminar on the 'Business Objects' computer program.  (Doc.

1 at ¶ 84).  Radi's colleague Darleen Young was appointed as an 'administrator' in the Business

Objects software program.  (Young Affidavit at 13, attached as Ex. 6).  Though plaintiff Radi

was unable to access a portion of the Business Objects computer program starting in May of

2007, the issue was resolved by April 14, 2008, and Radi was then able to access the sought-after

portion of the program.  (April 14, 2008 e-mail, attached as Ex. 7).  The administrator of the

computer program explained that she had earlier encountered some difficulties in making

modifications to the program, and that consequently "there were certain components that the developers should [have been] able to access, but could not." (Ex. 6 at 13-14). The delay in confirming access to the previously restricted portions of the computer program was due to the administrator's inability to resolve the issue prior to attending further training, which was not arranged immediately because access for developers was not a primary priority. (Id.). Despite obtaining access by April 14, 2008, plaintiff Radi continued to send confrontational emails to her colleagues about the situation. (See Ex. 8).

Plaintiff Radi requested that she receive training on the Oracle/PS computer system in October of 2008, and was told by her supervisor that such training was only for employees who "have a need to attend." (October 2009 e-mails, attached as Ex. 9). Many of Radi's colleagues were denied training on the Oracle/PS system because, while the system is "an application to input human resources transactions," Radi and her direct colleagues did not do the sort of "development work" for which the system was designed. (Ex. 6 at 10-11). Rather, Radi was employed in the "Reporting Group." (Id.).

Darleen Young became plaintiff Radi's direct supervisor on November 24, 2008, when Young was promoted to the position of Technical Branch Chief of Reporting. (EAD Organizational Staff Changes, attached as Ex. 10; Ex. 6 at 4).

Plaintiff Radi refused to report for work after the announcement of Young's promotion; she did not report for work for several months, and ultimately was removed from her position for excessive Absences Without Leave ("AWOL"). (Ex. 4; Ex. 6 at 4). Instead, Radi e-mailed her third-level supervisor and raised personal criticisms of Ms. Young, including allegations that

Young intentionally blocked Radi from using the Business Objects computer program, and that Young arrives to work late in the morning.  (Nov. 26, 2008 e-mail, attached as Ex. 11).  Radi's e-mail to the third-level supervisor also requested a reassignment to another division; it stated that "[w]ith all due respect to your decision, if you decided to keep Ms. Darleen Young as a branch chief of reporting group, I would hope you would give me the opportunity to transfer out of your group by reassigning me to another group within the PSC." (Id. at 3).

Radi again e-mailed her third-line supervisor on Dec. 1, 2008 and stated that she was "very uncomfortable coming into work with the current situation," and asked for a "leave of abs[ence] for the week."  (Dec. 1, 2008 e-mail, attached as Ex. 12).  The third-level supervisor instructed Radi to submit leave requests to her direct supervisor: Ms. Young.  (Terry Hurst Affidavit at 6-7, attached as Ex. 13).  The third-level supervisor spoke with Radi by phone and encouraged her to return to work and discuss any problematic issues or reassignment with her direct supervisor.  (Id.).  Radi was again instructed to submit her leave requests to her direct supervisor on December 8, 2008.  (Leave Requests e-mail, attached as Ex. 14).

Despite refusing to communicate with her direct supervisor, Radi was nonetheless granted approximately six weeks of leave through early January, 2009 (including 80 hours of sick leave without providing acceptable medical justification).  (Notice to Report for Duty at 1, attached as Ex. 15).  After compiling nearly 200 straight hours of leave, HHS ordered Radi to report for duty or to provide appropriate medical documentation for any necessary sick leave. (Id.).

Radi's continuing absence from work was treated as Absence Without Leave ("AWOL") beginning January 2, 2009.  (January 9, 2009 e-mail, attached as Ex. 16).  She was placed in an AWOL status for her refusal to report to work or properly request leave.  (Ex. 6 at 4).

On January 12, 2009, Radi was informed that her requests for a new direct supervisor or a new position had been denied, and that she must continue to request leave through Ms. Young. (January 12 2009 e-mail, attached as Ex. 17).  Radi was also reminded that she had been directed to return to work numerous times, and had refused.  (Id.).

By March 13, 2009, Radi had still not returned to work, and had been been AWOL for over two months.  She was consequently proposed for removal from federal service based upon the excessive amount of AWOL as well as Radi's refusal to follow work-related orders. (Proposed Removal, attached as Ex. 18).  The Proposed Removal documented the months of absences and AWOL without any acceptable medical justification, and stated that nearly 400 hours of AWOL and failure to report to duty resulted in serious consequences for her branch. (Id. at 5).  The absences "negatively affected [the] Branch's support of the mission of the Enterprise Application Division, and prove[d] [Radi] to be unreliable."  (Id.).

Radi was removed from her employment with HHS on April 23, 2009.  (Ex. 4).  Shortly thereafter, the National Treasury Employees Union ("NTEU") advised HHS that it would pursue arbitration on Radi's behalf pursuant to the collective bargaining agreement.  (May 21, 2009 NTEU letter, attached as Ex. 19).

## LEGAL STANDARDS

### A.     Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction challenges a court's authority to hear the matter raised in the complaint.  See Davis v. Thompson, 367 F.Supp.2d 792, 799 (D.Md. 2005).  A plaintiff carries the burden of establishing subject-matter jurisdiction.  Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). A district court is free to consider evidence outside of the pleadings in determining whether subject-matter jurisdiction exists, and the consideration of such evidence does not convert the motion into one for summary judgment.  See Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 1157, 1159 (4th Cir. 1991).  Actions should be dismissed for lack of subject-matter jurisdiction when the plaintiff brought suit prior to exhausting all administrative remedies.  See Khoury v. Meserve, 268 F.Supp.2d 600, 606 (D.Md. 2003), aff'd 85 Fed. Appx. 960 (4th Cir. 2004).

Applicable regulations require that a federal employee *timely* exhaust her administrative remedies by bringing all complaints of discrimination to an EEO counselor within forty-five days of the occurrence.  29 C.F.R. § 1614.105 (2009).  Failure to make timely EEO contact precludes a federal employee from maintaining a Title VII suit against the government.  Boarman v. Sullivan, 769 F. Supp. 904, 908 (D. Md. 1991); Zografov v. V.A. Medical Center, 779 F.2d 967 (4th Cir. 1985).  While the timely filing of a complaint with the EEOC may be subject to equitable estoppel, Zografov, 779 F.2d at 969, the government can be estopped from asserting the time limit as a defense only if a plaintiff has provided proof of affirmative misconduct on the part of the agency which prevent an employee from timely filing a complaint.  Id.; Nealon v. Stone, 958 F.2d 584, 589 (4th Cir. 1992).

On the other hand, a complete failure to bring a particular claim to the attention of an EEO counselor <u>does</u> deprive the Court of jurisdiction over that claim.  The Fourth Circuit requires that, "[b]efore a federal court may assume jurisdiction over a claim under Title VII, ... a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. § 2000e-5(b), which include an investigation of the complaint ... by the EEOC."  <u>Washington v. Nordstrom, Inc.</u>, 2001 WL 282699, *2 (D. Md. 2001), <u>citing</u> <u>Davis v. North Carolina Dep't of Correction</u>, 48 F.3d 134, 137 (4th Cir.1995).


**B.**     **Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

Complaints like the one filed by plaintiff Radi should be dismissed when they fail to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of a complaint; . . . [and] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992).  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id</u>. at 1950 (brackets added; citation omitted).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id</u>., <u>citing</u>

Twombly, 550 U.S. at 556.  Hence, while the complaint need not set out "detailed factual allegations," Twombly, 550 U.S. at 555, it must provide sufficient factual amplification "to raise a right to relief above the speculative level." Id.

### C.     Summary Judgment

A party is entitled to summary judgment if the evidence "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Supreme Court has emphasized that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Trial courts should enter summary judgment "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.  Where the plaintiff fails to meet this burden, "a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial."  Hayes v. Hambruch, 841 F. Supp. 706, 708 (D. Md. 1994).  The Court of Appeals for the Fourth Circuit has emphasized that trial judges have an "affirmative obligation. . .to prevent factually unsupported claims and defenses from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F. 2d. 1126, 1128 (4th Cir. 1987).

The statutory purpose of summary judgment applies no less to discrimination cases than to commercial or other areas of litigation.  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) cert. denied 474 U.S. 829.  If the opponent of a summary judgment does not have a reasonable

prospect of prevailing the parties should not be subjected to the time and expense of trial.

Palucki v. Sears, Roebuck & Co., 879 F. 2d 1568, 1572 (7th Cir. 1989).

## ARGUMENT

**A.**   **Claims of Discrimination Prior to February of 2001 Should Be Dismissed Because Plaintiff Radi Released HHS From Any Liability.**

The claims for employment discrimination for any conduct prior to February of 2001 should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because plaintiff Radi voluntarily executed a contract with HHS that released the agency from any potential liability for those claims.

An employee may waive a cause of action for employment discrimination as part of a settlement agreement, Kendall v. Watkins, 998 F.2d 848, 851 (10th Cir. 1993), but, when she does so, she agrees to extinguish the legal rights she previously sought to enforce in exchange for those secured under the agreement.  See Bell-Atlantic Washington, D.C. v. Zaidi, 10 F. Supp.2d 575, 577 (E.D.Va. 1997).  Thus, when an employee waives a discrimination claim pursuant to a settlement agreement, she is barred from subsequently litigating the claim and any complaint based on the waived claim is properly dismissed.  Zaidi, 10 F. Supp.2d at 577 ("When Zaidi assented to the settlement agreement ..., he gave up his legal right to a determination on the merits of any claims that he had or could have had against Bell Atlantic arising out of his employment...."); see also Brown v. U.S., 271 F. Supp.2d 225, 228  (D.D.C. 2003) (dismissing two claims of a Title VII complaint because settlement of those claims during the administrative process precluded a civil action).  See also, Kendall v. City of Chesepeake, Va., 174 F.3d 437,

441 n.2 (4th Cir. 1999); <u>Cassiday v. Greenhorne & O'Mara, Inc.</u>, 220 F.Supp.2d 488, 493 (D. Md. 2002).

The 2001 settlement agreement in this case (signed by Radi with the benefit of counsel) plainly states that it "resolves <u>all claims</u> . . . which might or could have been alleged . . . against the Agency . . . based on incidents arising out of [her] employment . . . occurring on or before the effective date of this agreement" and states that Plaintiff "<u>will not file</u> a complaint, grievance, charge, appeal, action, or <u>suit</u> . . . with respect to any action which is related to or arose out of her employment . . . prior to the effective date of this agreement."  (Ex. 5 at 2-3) (emphasis added).

Despite a settlement agreement in which Radi resolved and pledged not to re-raise claims of discrimination based on Agency actions before that date, her Complaint here raises allegations of discrimination by the HHS dating back 17 years to 1992.  (<u>See</u>, <u>e.g.</u>, Doc. 1 at ¶¶ 15-73.)  Such claims were fully and finally released by the settlement agreement, and must be dismissed.

**B.    Claims of Discrimination Not Raised in the EEO Investigation Should Be Dismissed under Rule 12(b)(1) for Failure to Exhaust Administrative Remedies.**

Plaintiff's complaint also includes numerous allegations that she did not raised and were not considered during the earlier EEO investigation, and they all must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for failure to exhaust administrative remedies.

An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC.  <u>Chacko v. Patuxent Institution</u>, 429 F.3d 505, 508 (4th Cir. 2005).  Though construed liberally, the allegations contained in the administrative charge of discrimination operate to limit the scope of any subsequent judicial complaint.  <u>Id</u>. at 509; <u>Guion</u>

v. England, 545 F.Supp.2d. 524, 531 (E.D.N.C. 2008), aff'd, 296 Fed.Appx. 347 (4th Cir. 2008).

This administrative exhaustion requirement is an integral part of the Title VII enforcement

scheme because it channels dispute resolution to the efficiency and expertise of the EEOC,

promotes agency-monitored settlement, and gives the agency notice of the charges and an

opportunity to investigate them.  Chacko, 429 F.3d at 510.  Thus, the factual allegations made in

formal litigation must correspond to those set forth in the administrative charge, and charges

concerning "different time frames, actors, and conduct" than those raised administratively have

not been exhausted.  Id. at 510-11.

   As set forth above, the allegations that Radi raised in her administrative complaint (and

that were investigated) were limited to whether plaintiff Radi was discriminated against when:

(1) her request for continued leave was denied on January 12, 2009; (2) she was placed on

Absence Without Leave ("AWOL") starting January 2, 2009; (3) her request for a reassignment

on December 10, 2008, was denied; (4) her request to attend training for the Oracle/PS computer

software program was denied on October 23, 2008; and (5) she was denied access to the

computerized "Business Object System" from July 2007 through April 2008.  (Letter of

Acceptance at 1, attached as Ex. 3).

   All other allegations of discrimination raised in the Complaint must be dismissed; these

include (1) incidents involving a Mr. Mease and occurring at some point between 2001 and 2007

(Doc. 1 at ¶¶ 74-83), (2) allegations that Radi was denied training opportunities in April 2008

and rejected for a higher-paying position that she applied for on October 1, 2008 (Doc. 1 at ¶¶

98-101), (3) that Radi was proposed for and ultimately removed from federal service (Doc. 1 at

¶¶ 118, 121), and (4) all other allegations aside from the five that were specifically raised and considered in the EEO Complaint.  None of these incidents were timely raised or exhausted in Radi's administrative claim, and the Court lacks jurisdiction to adjudicate them.

**C.    Claims of Discrimination Prior to December 8, 2008 Must Be Dismissed Even If Raised in the EEO Complaint.**

A federal employee is required to initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory, or the effective date of the action if a personnel action.  29 C.F.R. § 1614.105(a)(1); Jakubiak v. Perry, 101 F.3d 23, 26-27 (4th Cir. 1996).  Failure to comply with this 45-day requirement precludes an individual from maintaining an action under Title VII of the Civil Rights Act.  Zografov v. VA Medical Center, 779 F.2d 967 (4th Cir. 1985); Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005).

Plaintiff Radi first contacted an EEO counselor with regard to these allegations on January 22, 2009.  (Ex. 1).  Consequently, Radi did not timely raise and exhaust claims for any discrimination that allegedly occured more than 45 days before that date: December 8, 2008.

Such claims include (1) her request to attend training for the Oracle/PS computer software program that was denied on October 23, 2008; and (2) that she was denied access to the computerized "Business Object System" from July 2007 through April of 2008.  For these claims, Rad failed to make the required EEO contact within 45 days and accordingly did not timely exhaust her administrative remedies.  All claims for discrimination based on incidents before December 8, 2008 are barred.   See Nealon v. Stone, 958 F.2d 584 (4th Cir. 1992)**.**

**D.    Any Claim of Discrimination For Removal from Federal Service is Barred and Must Be Dismissed.**

To whatever extent Complaint seeks relief for Radi's removal from federal service (Doc. 1 at ¶ 121), the claim must be dismissed for the reasons set forth above: it was never raised in the administrative proceeding, never investigated by the agency, and is not properly raised for the first time in a district court complaint.

Such a claim is barred for another reason as well: Radi has already opted to pursue relief for her removal from federal service through the grievance procedure of her union's collective bargaining agreement (Ex. 19), and the claim for discrimination here is consequently barred under 5 U.S.C. § 7121(d), which requires an aggrieved employee to either "raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d). The employee is deemed to have made her option "at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, . . . whichever occurs first." Id. See also 29 C.F.R. § 1614.301(a); Guerra v. Cuomo, 176 F.3d 547, 548 (D.C. Cir. 1999); Smith v. Kaldor, 869 F.2d 999, 1005-08 (6th Cir. 1989).

Radi raised her grievance under the negotiated procedure of the collective bargaining agreement many months before she brought this action. (See Ex. 19). Accordingly, she is now barred from raising the same grievance in this action, and such a claim must be dismissed.

**E.      All Remaining Claims For Employment Discrimination Should Be Dismissed, Or Summary Judgment Should Be Awarded In Favor Of The Defendant.**

While most of the allegations raised in the Complaint should be dismissed for the reasons set forth above, any remaining claims (which were not previously released, were properly exhausted and over which the Court has jurisdiction) should either be dismissed under Federal

Rule of Civil Procedure 12(b)(1), or summary judgment should be awarded in favor of the

defendant.  These claims are limited to: (1) the denial of a request for continued leave on January

12, 2009; (2) placement on Absence Without Leave ("AWOL") starting January 2, 2009; and (3)

the denial of a request for a reassignment made on December 10, 2008.

### 1.       The Legal Framework

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating

against an employee on the basis of race, nationality, religion or color, or from retaliating against

an employee who reports a practice which he or she believes is discriminatory.  42 U.S.C. §§

2000e-16, 2000e-3(a).  Absent direct evidence of discrimination or retaliation, Title VII claims

alleging discrimination or retaliation are analyzed under the 'burden-shifting' framework

established in McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973).

A plaintiff raising such a claim must allege and establish a *prima facie* case of

discrimination or retaliation, or else dismissal or summary judgment is proper.  Id. at 802.  To

state a *prima facie* case of discrimination under Title VII, a plaintiff must establish that: (1) she is

a member of a protected class; (2) she suffered an adverse employment action; (3) she was

performing her job satisfactorily at the time of the adverse employment action; and (4) that

similarly-situated employees outside her protected class received more favorable treatment.  See

McDonnell Douglas Corp., at 802; White v. BFI Waste Services, LLC, 375 F.3d 288 (4th Cir.

2004).  The ultimate question for the Court is "whether the plaintiff was the victim of intentional

discrimination."  Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 286 (4th

Cir. 2004).

In order to establish a *prima facie* case of retaliation, a plaintiff must allege and demonstrate that: (1) she engaged in protected activity or opposition to discrimination, (2) the employer took a materially adverse employment action against her, and (3) a causal connection existed between the protected activity and the adverse action. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). Additionally, the plaintiff must allege and demonstrate that the employment action might have "dissuaded a reasonable worker from making or supporting a charge of discrimination," and that it produced "injury or harm."  Burlington Northern, 548 U.S. at 68.

For a "hostile work environment" claim, a plaintiff must allege and demonstrate that the purported harassment was (1) unwelcome, (2) based on a protected class, and (3) "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." McNeal v. Montgomery Country, Maryland, 307 Fed.Appx. 766, 776 (4th Cir. 2009), citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-184 (4th Cir. 2001).

If the plaintiff successfully establishes a *prima facie* case of discrimination or retaliation, she must still rebut (or demonstrate as pretextual) a defendant's showing of legitimate, non-discriminatory reasons for the adverse action in order to survive summary judgment.  McDonnell Douglas, 411 U.S. at 804; Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989).

###     2.     No Adverse Action

Plaintiff Radi has not alleged and cannot demonstrate that she suffered any materially adverse employment actions.  All remaining claims for discrimination and retaliation must consequently be dismissed or summary awarded in favor of the defendant.

Title VII does not regulate all activities in the workplace, but rather only regulates adverse employment decisions.  Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981), cert. denied, 454 U.S. 892 (1982).  The inquiry must focus on whether the plaintiff experienced discrimination in an "ultimate employment decision such as hiring, granting leave, discharging, promoting and compensation."  Page, 645 F.2d at 233.

This category of conduct does not extend to conduct such as reassignments with no change in pay or duties, Caussade v. Brown, 924 F. Supp. 693, 700-702 (D. Md. 1996); Francis v. Board of School Commissioners, 32 F. Supp. 2d 316, 320 n.3 (D. Md. 1999), or assignments to "clerical" or administrative tasks.  Raley v. Board of St. Mary's County Commissioners, 752 F. Supp. 1272, 1281 (D. Md. 1990).  The range of employment decisions that fall within the scope of Title VII is extremely limited because the statute does not "allow a court to sit as a super-personnel department" or to conduct "judicial review of business decisions."  Pfeifer v. Lever Bros. Co., 693 F. Supp. 358, 364 (D. Md. 1987).  See also Kralman v. Illinois Department of Veterans' Affairs, 23 F.3d 150, 156 (7th Cir. 1994).

Radi's complaint that she was not reassigned to another division does not constitute an adverse employment action because it did not result in "a decrease in compensation, job title, level of responsibility, or opportunity for promotion."  James v. Booz-Allen Hamilton, Inc., 368 F.3d 371, 376-77 (4th Cir. 2004).  Remaining in the same branch and reporting to a supervisor that Radi did not like may be considered an "irritation or inconvenience, but [such personnel decisions did] not affect a term, condition, or benefit of her employment."  Spriggs v. PSC, 197 F.Supp.2d 388, 393 (D.Md. 2002).  See also Ward v. Johns Hopkins University, 861 F. Supp.

367, 377 (D. Md. 1994) (holding that not speaking to plaintiff and giving her less favorable assignments in the "dirtier" part of the basement do not amount to adverse employment actions). There is no allegation and no evidence that Radi suffered a decrease in compensation or any other significant personnel decision that would rise to the level of an adverse employment action. A transfer or reassignment, or refusal to grant such a reassignment, does not qualify as an adverse employment action unless (unlike here) the decision had a truly significant detrimental effect on the employee, such as reduced pay, diminished opportunity for promotion, less responsibility, or a lower rank.  Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999); McDougal-Wilson v. Goodyear Tire and Rubber Co., 427 F.Supp.2d 595, 608 (E.D.N.C. 2006); Wagstaff v. City of Durham, 233 F.Supp.2d 739, 744 (M.D.N.C. 2002)(both citing Boone, 178 F.3d at 256).

Radi's claims that she was not granted additional leave and was converted to AWOL status also do not constitute adverse employment actions.  For one, the undisputed facts show that Radi was granted annual and sick leave for approximately six straight weeks after she refused to come to work in November of 2008.  (See Ex. 4; Ex. 15).  More importantly, the evidence is clear that Radi refused to properly seek leave in the manner required by HHS.  Radi was consistently instructed that her leave requests should go to her direct supervisor, yet she consistently refused to properly submit the leave requests.  (See Exs 12-16).  Radi cannot credibly argue that her leave requests were denied when, from November 2008 onwards, she consistently refused to submit them properly.

Though the Court lacks jurisdiction to consider Radi's complaints regarding the denial of training opportunities and access to computer software, such conduct also does not constitute an

adverse action because there is no evidence that a term, condition, or benefit of employment was adversely affected.  See, e.g., Chika v. Planning Research Corp., 179 F.Supp.2d 575, 584 (D.Md. 2002) (denial of training opportunities does not constitute an adverse action).

### 3.    No Causal Connection

Radi also fails to establish a *prima facie* case of retaliation because there is no evidence anywhere in the record of a "causal connection between the protected activity and the [purported] adverse action." Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).  In order to survive summary judgment, a plaintiff must "proffer evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997).

Plaintiff Radi's prior EEO activity was resolved nearly eight years prior to the alleged discrimination in this case.  While a close temporal proximity between the protected activity and alleged acts of retaliation can sometimes support an inference of a causal connection (like that of four months in Williams v. Cereberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)), a lengthy lapse between the two negates any causal inference between the two.  Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998); Rupert v. Geren, 605 F.Supp.2d 705, 715 (D.Md. 2009).  A time span of nearly eight years between the earlier protected activity and the incidents raised here negates any inference of causation.  Rupert, 605 F.Supp.2d at 715; Dowe, 145 F.3d at 657.

Plaintiff's retaliation claim does not otherwise provide any reasonable connection between the protected activity and the alleged discriminatory behavior.  The management official

-19-

involved in the protected activity that was resolved in 2001 played no role in and is not even

named in Radi's allegations here.  (Doc. 1 at ¶¶ 70-71, 84-121).  There is no allegation or

evidence that either of Radi's direct supervisors (Mr. Butler in October of 2008 and Ms. Young

beginning in November of 2008) was motivated in any way by the earlier EEO proceeding.

Simple knowledge of a prior complaint and the occurrence of some later agency action do

not constitute evidence of a causal connection.  Rupert, 605 F.Supp.2d at 715-16 (holding that a

direct reference in the plaintiff's disciplinary documents to an earlier EEO complaint, for

purposes of underscoring the impropriety of his offenses, did not constitute evidence sufficient

for a *prima facie* case).  Here, as in Rupert, Radi can point to no evidence concerning the

incidents she has complained of that suggests, even indirectly, that any of the agency's actions

were taken "because [she] engaged in protected activity."  Id.  There is similarly no evidence that

Radi's supervisors or co-workers acted out of retaliatory animus.

Without evidence of any causal connection, Radi's allegations of retaliation do not state a

*prima facie* case and judgment should be granted for the United States.  Dowe, 145 F.3d at 657-

58.

### 4.    No Hostile Work Environment or Constructive Discharge

Plaintiff Radi has also failed to properly allege or demonstrate a *prima facie* case that she

was subjected to a "hostile work environment" in violation of Title VII of the Civil Rights Act.

To establish such a claim, a plaintiff must allege and demonstrate that the purported harassment

was (1) unwelcome, (2) based on a protected class, and (3) "sufficiently severe or pervasive to

alter the conditions of employment and create an abusive atmosphere."  McNeal v. Montgomery

Country, Maryland, 307 Fed.Appx. 766, 776 (4th Cir. 2009), citing Spriggs v. Diamond Auto
Glass, 242 F.3d 179, 183-184 (4th Cir. 2001).

The court is to look at "all the circumstances" surrounding the alleged hostile
environment, including the "frequency" and "severity" of the harassing conduct, whether the
conduct is "physically threatening or humiliating . . . and whether it reasonably interferes with an
employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). As the
Court of Appeals for the Fourth Circuit has put it, "Title VII does not provide a remedy for every
instance of verbal or physical harassment in the workplace," Lissau v. S. food Serv., Inc., 159
F.3d 177, 183 (4th Cir. 1998), and while an employee's colleagues may be "unpleasant and
sometimes cruel, . . . not every such instance renders the workplace objectively hostile." Shaver
v. Dixie Trucking Co., 181 F.3d 90, 3 (4th Cir. 1999), quoting Hartsell v. Duplex Prods., Inc., 123
F.3d 766, 772 (4th Cir. 1997).

Title VII is not a way to insulate oneself from "ordinary tribulations of the workplace."
Wang v. Metropolitan Life Ins. Co, 334 F.Supp.2d 853, 864 (D. Md. 2004). Neither the
allegations nor the evidence support a determination that any purported harassment was severe or
pervasive enough to alter the terms of Radi's employment or to create an abusive atmosphere.
Similarly, the evidence does not support even an inference that any of Radi's experiences were
based on her race, nationality or her protected EEO activity from years earlier. To the contrary,
while denial of training opportunities or access to computer programs may have been frustrating,
such "administrative problems," even if attributable to a supervisor, and even if they had
rendered tasks more difficult, do not rise to the demanding level of a "severe or pervasive"

harrassing environment.  While Radi alleges that at some point Ms. Young made a negative suggestion about her competence (Doc. 1 at ¶ 94), such a comment does not work a discriminatory change in the terms and conditions of one's employment.  Hartsell v. Duplex Products, Inc, 123 F.3d 766, 773-75 (4th Cir. 1997) (holding that a series of offensive comments did not rise to the level of a hostile work environment).

Further, Radi's allegations concerning reassignment, indefinite leave, and AWOL are only rational agency responses to Radi's refusal to fulfill basic job requirements like reporting to work or contacting her direct supervisor; such reactions do not constitute harassment of any kind. Dachman v. Shalala, 46 F.Supp.2d. 419, 437-38 (D. Md. 1999) (finding that a multitude of work incidents including leave denial and reassignment denial were reactive to challenges the employee created and not harassing).

In short, the conduct that Radi complains of was neither "severe," "frequent," "physically threatening," or "humiliating," Harris, 510 U.S. at 23, and nothing in the Complaint or in the evidence even approaches the sort of conditions that support a claim for a hostile work environment.  The claim should accordingly be dismissed because "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview."  Id. at 21; Raley v. Board of St. Mary's County, 752 F.Supp. 1272, 1280 (D.Md. 1990).

For these same reasons, any claim that Radi was "constructively discharged" should be dismissed or summary judgment should be awarded in favor of the defendant, because Radi cannot meet the even higher standard of demonstrating such a claim.  A claim for "constructive

discharge" requires a greater showing of "intolerability" than a claim for  hostile work environment, and Radi's claim fails both.  See Pennsylvania State Police v. Suders, 542 U.S. 129, 146-47 (2004).

A constructive discharge occurs only when an employer deliberately makes an employee's working conditions intolerable and thereby forces her to quit her job.  Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985).  Intolerability of working conditions is assessed under the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign; an employee's subjective perceptions are not allowed to govern a claim of constructive discharge.  Id.  While an employee is protected from a calculated effort to pressure her into resignation through the imposition of unreasonably harsh conditions, every job has frustrations, and every workplace grievance cannot be transformed into a claim for constructive discharge.  Id.  Dissatisfaction, a feeling of unfair criticism, or unpleasant working conditions are not so intolerable as to cause a reasonable person to resign.  Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004) (holding that a supervisor's yelling at employee, saying she was a poor manager, giving her poor evaluations, chastising her publicly, and requiring her to work with an injury did not rise to intolerability of constructive discharge).

For the reasons set forth above, Radi's complaints do not meet this demanding standard. An employee like Radi has no right to take six straight weeks of leave without providing justification, medical or otherwise.  An employee similarly has no right to choose her supevisor or to refuse to report to work until demands for a change of supervisor are met.  HHS'

requirement that Radi speak to her supervisor, show up for work, and properly submit leave

requests for absences are reasonable, and certainly do not constitute the sort of yelling, harassing,

and chastising that can, under very limited and extreme circumstances, raise a claim for a

discriminatory constructive discharge.  Bristow, 770 F.2d at 1256.

Finally, any claim for a constructive discharge must be dismissed because the undisputed

facts show that Radi was terminated by HHS, and did not resign.  See, e.g., Johnson v. Sullivan,

764 F.Supp. 1053, 1067 (D.Md. 1991); Lyons v. Peake, 2009 WL 2461711, *4 (D.Md. 2009);

Jordan v. City of Gary, 396 F.3d 825, 837 (7th Cir. 2005).

### 5.    Legitimate, Non-Discriminatory Reasons, and No Showing of Pretext

Even if Radi had properly alleged and was able to demonstrate a *prima facie* case of

employment discrimination (which she has not), summary judgment should still be awarded in

favor of the defendant because HHS offers legitimate, non-discriminatory reasons for the

allegedly discriminatory conduct that Radi cannot successfully rebut.  See  McDonnell Douglas,

411 U.S. at 804; Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989).  There is

similarly no evidence of any causal connection between unlawful discrimination or retaliation

and any of the acts complained of because the conduct of HHS was entirely legitimate and

appropriate.  Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994); Williams v. Cerebronics, Inc., 871

F.2d 452, 457 (4th Cir. 1989).

The critical issue in evaluating whether the defendant offers legitimate, non-

discriminatory reasons is the employer's motive for its actions.  International Brotherhood of

Teamsters v. United States, 431 U.S. 324, 335-36 n.15 (1977).  The undisputed facts establish

that HHS' motives in (1) denying the request for reassignment, (2) placing Radi on AWOL status, and (3) denying the request for additional leave , was because Radi had already been granted six weeks of leave despite a complete failure to follow directions or provide a legitimate justification for the leave (including 80 hours of sick/medical leave), and HHS reasonably and appropriately required Radi to report to work and submit her leave requests directly to her supervisor.  (Exs. 4, 6 at 4, 13 at 6-7, 14, 17, 18).

An employee's failure to report to work or contact her supervisor is a failure to meet the basic job duty of attendance, and six weeks without reporting to work or contacting her direct supervisor in any way constitutes legitimate, non-discriminatory justifications for the conduct that Radi now complains of.  See, e.g., Warren v. Halstead Indust., Inc., 802 F.2d 746, 756 (4th Cir. 1986).  There is no evidence that this justification was a mere "pretext" for unlawful discrimination, and accordingly all remaining claims should be either dismissed or have judgment awarded in favor of the defendant.  Hughes, 48 F.3d at 1385.

Though Radi's complaints regarding her training assigments and computer programs must be dismissed for all the reasons set forth above, HHS offers legitimate, non-discriminatory reasons for its conduct with respect to those claims as well.  The issue of access to the Business Objects computer program was common to Radi's entire group and was unintentional; the evidence shows that the administrator of the program had difficulties making the modifications that would be required to provide access, and required additional training in order to accomplish the task.  (Exs. 6 at 13-14, 7).  Radi and the rest of her colleagues obtained access by April of 2008.  (Ex. 7).  Similarly, Radi and many of her other colleagues were denied training on the

-25-

Oracle/PS computer system because their work did not require training on the system.  (Exs. 6 at

10-11, 9).  Like the claims regarding leave requests and AWOL status, there is no evidence that

these justifications were mere "pretext" for unlawful discrimination, and the claims should be

either dismissed or have judgment awarded in favor of the defendant.  Hughes, 48 F.3d at 1385.

## CONCLUSION

For these reasons, the United States respectfully urges the court to dismiss the Complaint

or award summary judgment in favor of the defendant.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: _____/s/_____
Michael J. Friedman (Bar No. 28944)
Assistant United States Attorney
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800